**Geneva L. DiMARCO, Plaintiff,**

v.

**MICHIGAN CONFERENCE OF TEAMSTERS WELFARE FUND, and MCTWF Board of Trustees, Defendants.**

**No. 93–CV–73067–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 18, 1994.

Thomas M. Lizza, Detroit, MI, for plaintiff.

Frank Locante, Milwaukee, WI, for defendant.

## OPINION AND ORDER REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

ROSEN, District Judge.

### I. INTRODUCTION

This action stems from the denial of death benefits to Plaintiff Geneva DiMarco ("Plaintiff") by Defendant Michigan Conference of Teamsters Welfare Fund ("the Fund"). In her January 10, 1994 first amended complaint, Plaintiff alleges two causes of action. The first is a claim against the Fund for the death benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). The second is against the Fund's Board of Trustees ("the Board") for an alleged breach of its fiduciary duties to Plaintiff. Count II arises under ERISA § 404(a), 29 U.S.C. § 1104(a).

The parties have filed cross-motions for summary judgment, and oral argument was heard on April 14, 1994. Having reviewed the pleadings and argument of the parties, the Court is now prepared to rule on the pending motions. This opinion and order sets forth that ruling.

### II. FACTUAL BACKGROUND

The following facts of this case are undisputed. Plaintiff lived with Tom DiMarco for 29 years, although she and Mr. DiMarco never married. DiMarco Dep., p. 19. Mr. DiMarco worked for Western Waterproofing Company from 1968 until his death on November 15, 1989. Mr. DiMarco was a member of the International Brotherhood of

Teamsters, and, as such, was a participant in the Fund.[1]

The Fund was established pursuant to a trust agreement between the union and the employers/contributors. This trust agreement was last amended in March of 1985, and it specifically provides that the Board of Trustees is to both create and administer the plan. The trust agreement gives the Board the power to "establish Group Health, Accident and Death Benefit Plans, including in its discretion dependent coverages, which the Board deems adequate and actuarially sound." *See* Sharon Hooper's Dep. Ex. 5, p. 11.[2] The Board is also the named fiduciary of the plan.

The Fund provides health, disability, and death benefits pursuant to a master plan document, dated April 1, 1979. *See* Hooper Dep., Ex. 6. This master plan document, in turn, has been modified by changes set out in subsequent summary plan descriptions (SPDs).[3] As a participant, Mr. DiMarco should have received in 1983, 1986 and 1987 SPDs sent through first-class mail either to his home or to his place of employment for in-hand distribution. *See* Hooper Dep., pp. 55–59; Exs. 7 (1987), 12 (1983) and 13 (1986). *See also* Hooper Aff., pp. 1–2. These SPDs set out in detail the available benefits and claims procedures of the Fund.

While Plaintiff concedes that it was "highly possible" that Mr. DiMarco had in fact received such SPD booklets, she claims that she never saw them. DiMarco Dep., p. 9. Plaintiff also testified, however, that she understood the difference between the Fund's plan A and plan B for medical care. *Id.* at 8.[4] Moreover, she testified that she participated in the submission of "maybe" two claims for health care benefits under Mr. DiMarco's plan. *Id.* at 7. Fund records reveal that it received and paid a claim for optical services provided to Plaintiff on May 4, 1989. Hooper Dep., p. 70.

Mr. DiMarco's Fund identification card clearly indicates that Plaintiff is the named beneficiary for death benefits available under the Fund. Hooper Dep., Ex. 2. The death benefit is a $20,000.00 lump sum which is payable upon provision by the named beneficiary of a certified death certificate of the Fund participant. *See* Hooper Dep., p. 34; Ex. 7, p. 24 (1987 SPD);[5] Ex. 10, p. 6 (1991 SPD for death and disability benefits). Thus, it is undisputed that so long as Plaintiff provided a death certificate, she was entitled to the death benefits—regardless of her marital status with Mr. DiMarco.[6]

Shortly after Mr. DiMarco's death in November of 1989, Plaintiff telephoned the local union office to which Mr. DiMarco was affiliated. Plaintiff testified:

> Q. Did you make any inquiries of anybody as to what benefits were payable

1. Specifically, Mr. DiMarco was a member of the SO(A) plan. The meaning of these letters is unexplained throughout the record.

2. Sharon Hooper is Administrations Director of the Fund. Hooper Dep., p. 7.

3. This is the Court's reading of which documents govern Fund administration. The Fund has stated in its Count I summary judgment brief that the last publication of a full plan document was in 1979. *See* Fund's Count I Brief, p. 2. Ms. Hooper testified that there have been subsequent changes in the plan which sometimes necessitated the issuance of new SPDs. *Id.* at 59–60. Putting these two facts together, it appears that the plan documents at any given time are the 1979 master plan document plus the then-current SPD.

4. According to the 1987 and 1991 SPDs, Plan A gives participants and beneficiaries more comprehensive coverage provided by a limited number of enrolled physicians. Plan B offers a lesser range of benefits, but participants and beneficiaries can choose their own health care providers. *See* Hooper Dep., Ex. 7, p. 5; Ex. 14, p. 3.

5. Importantly, with respect to claiming death benefits, the 1987 SPD states: "If you die . . . your beneficiary should contact the Fund office in order to initiate a claim. . . . A Member Service Representative at the Fund office will discuss with . . . your beneficiary any statements which may be needed and will process the claims forms for payment." Hooper Dep., Ex. 7, p. 28. The 1983, 1986 and 1991 SPDs contain identical or similar language. *See id.*, Ex. 12, p. 25 (1983); Ex. 13, p. 29 (1986); Ex. 11, p. 20 (1991).

6. It appears that the earliest that Plaintiff knew she needed to submit only a death certificate to receive death benefits was when her counsel filed her claim on November 20, 1992. *See* Hooper Dep., Ex. 1 (Original Complaint, Ex. C.).

on the event of Tom's death—your husband's death? Pardon me.

   *    *    *    *    *    *

A. I call—I'll be honest with you. I don't remember if it was a week, two weeks, whatever. I called Local 247.

Q. [By Defendants' counsel] 247?

A. Uh-huh, to health and welfare.

Q. Whom did you speak to, do you know?

A. No. It was a young lady. I don't know her name. I didn't ask, and she didn't volunteer. So, and I just told her that he had passed away and that what did I need to do, and she said I need to come down and bring a marriage license, and I believe she also said death certificate.

Q. And what did you do after that call?

A. Nothing. Like I said, I was sick, had the operation, and just didn't do anything.

   *    *    *    *    *    *

Q. [By Plaintiff's counsel] ... After your conversation with the young lady at the Local 247 within a few weeks after your husband's death was there any reason that you did not go down to the local office other than what you've already indicated?

A. Yes.

Q. And what reason was that?

A. Because I didn't have a marriage license.

Q. And the woman had indicated to you that you needed to bring a marriage license with you?

A. Yes.

DiMarco Dep., pp. 9–11, 30.

On December 26, 1989, the Fund sent to Plaintiff a notice of her rights under COBRA to continue health care coverage under Mr. DiMarco's plan. Plaintiff responded by declining the coverage on January 4, 1990. Hooper Dep., Ex. 1.[7] Sharon Hooper, Administrations Director for the Fund, testified that by waiving COBRA coverage, Plaintiff's address would have been taken off the mailing list to receive Fund SPDs. Hooper Dep., p. 54.

In the late summer of 1992, Plaintiff was experiencing difficulty in making ends meet, and she shared this problem with a Teamster friend, Dane Rich. Mr. Rich explained to her that she might be entitled to certain benefits from the Fund. He then provided her with a copy of the 1991 SPD packet. *See* DiMarco Dep., pp. 15–19.

Plaintiff for a while did nothing, but in the late fall she contacted her present counsel. On November 20, 1992, counsel sent in a claim for the $20,000 death benefit with an attached death certificate. The Fund responded on January 18, 1993, by denying Plaintiff's claim on the ground that it was untimely filed. *See* Hooper Dep., Ex. 4.

The Fund's decision to deny Plaintiff's claim hinged upon a two-year limitations period for filing claims found in the Fund documents. The 1987 SPD states: "A claim for any loss must be filed within 2 years after the date of such loss. This period may be extended at the discretion of the Fund, if reasonable cause for the delay can be provided." Hooper Dep., Ex. 7, p. 23. *See also* Hooper Dep., Ex. 12, p. 20 (1983 SPD); Ex. 13, p. 24 (1986 SPD). The 1991 SPD, for its part, states: "All claims for benefits must be filed within two (2) years after the date of the eligible expense or loss." *Id.*, Ex. 11, p. 20.[8]

The SPDs indicate a method of appealing claim denials by the Fund. The 1991 SPD,

---

7. Plaintiff does not allege that Defendants failed to comply with any part of COBRA.

8. The 1979 master plan document states the following with respect to filing claims:
   **Proof of Loss—Claim Forms**—Written proof of loss shall be furnished within 90 days after the date of such loss in accordance with requirements established by the Trustees. Claim forms for submission of proof of loss shall be made available to the Employee by the Welfare Fund. *In no instance shall the Fund recognize as a covered expense any service for which a claim is filed in excess of 24 months after the date each service is rendered.*
   Hooper's Dep., Ex. 6, p. 7 (bold emphasis in original; underlining emphasis added). While this clause clearly envisions primarily health and disability benefits, it does have a two-year limitation for claims.

the one in effect at the time of the claim denial in the instant case, states:

> If you do not agree with why your claim was denied, you may request that a review be made of your claim. Any request must be made within 60 days after receiving the denial and accompanied by documents or records in support of the appeal. *The claim denial will include the name and address of the person you should write to for a review.*
>
> You may submit additional information with your request for review. You may request and receive copies of pertinent documents, although in some cases approval may be needed for the release of confidential information, such as medical records. You may submit issues and comments in writing.
>
> A decision about the review will be made within 60 days following receipt of your request for the review. If additional information is needed from you, the decisions will be made within 60 days following receipt of the additional information. You will be notified in writing of the decision, with specific reasons for the decision.

Hooper Dep., Ex. 14, p. 13 (emphasis added). The 1983, 1986 and 1987 SPDs contain similar language. *See id.* at Ex. 7 (1987 SPD); Ex. 12 (1983 SPD); Ex. 13 (1986 SPD).[9]

Ms. Hooper testified that the body which hears appeals is the Fund Board of Trustees. Hooper Dep., p. 11. She further testified that the Board has at least on one occasion

extended the two-year limitation period. *Id.* at 62.

Plaintiff has not appealed the denial of her claim to the Board of Trustees. However, the letter denying Plaintiff's claim did not make any mention of appeal rights or to whom an appeal should be addressed. *See* Hooper Dep., Ex. 4.

Plaintiff wrote two more letters to the Fund after her claim was denied. In those letters, dated February 1 and April 5, 1993, Plaintiff contested the Fund's two-year limitation period for filing claims and demanded "copies of all policies of insurance, beneficiary designations, certificates, by-laws, rules and regulations which relate in any way to the death benefits that were due upon the death of Thomas DiMarco." *See* Plaintiff's Brief, Ex. C. When the Fund failed to respond to these letters, Plaintiff initiated suit on June 30, 1993.

## III. ANALYSIS

### A. THE STANDARDS GOVERNING CONSIDERATION OF A MOTION FOR SUMMARY JUDGMENT.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

---

**9.** The provisions regarding claim denials and appeals found in the 1979 plan agreement read:

> **Notification to Claimant**—Within 30 days after receipt of any claim for benefits, the Administrator shall notify the claimant, in writing, of the action taken on his claim. If the claim is denied in whole or in part, the Administrator shall set forth in the written notice the specific reason for such denial, specific references to the Plan provisions on which the denial is based, a description of any additional material necessary, *and an explanation of the Plan's claims review procedure. The Administrator shall also notify the claimant of his right to appeal from such denial.*
>
> [ ] **Claim Review Procedure**—Within 60 days after receipt of notice that his claim has been denied, in whole or in part, the claimant, or his duly authorized representative, may file a written request for a review of his claim by the full Board of Trustees. Such request must set forth

the basis for the appeal and all pertinent data to substantiate his position. In connection with the appeal, the claimant, or his representative, will be given an opportunity to inspect the copies of pertinent documents and to review the information upon which the denial was based. The Board of Trustees, in its discretion, may hold a full hearing of the issues presented by the claimant. The Board shall act upon a request for a review within 60 days after receipt thereof, except that if a hearing is held, the Board may extend its review period to a maximum of 120 days. The claimant shall be notified in writing of the action taken by the Board of Trustees. Such notice shall include the specific reasons for the decision and specific references to the Plan provisions on which the decision was based. All such decisions will be final, conclusive, and binding upon the claimant.
Hooper Dep., Ex. 6, p. 8 (bold emphasis in original; underlining emphasis added).

Three 1986 Supreme Court decisions—*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[10] According to the *Celotex* Court:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment:

[*] Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

[*] The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

[*] This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. * * *

[*] The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

[*] The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

[*] The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (footnotes with citations omitted). The Court will apply the above principles in deciding the cross-motions for summary judgment.

### B. COUNT I SHOULD BE DISMISSED.

#### 1. The Parties' Arguments.

In Plaintiff's motion for summary judgment on Count I, she argues first that her claim is timely because the six-year statute of limitations for state contract actions should apply to her claim for death benefits. Second, Plaintiff argues that her case should not be dismissed for failure to make an appeal to the Fund's Board because she was not informed of this appeal process and because such an appeal in any case would be futile. Third, Plaintiff argues that the Fund should be equitably estopped from relying upon the two-year limitation period in the SPD. Plaintiff asserts that the Fund should have specifically informed her of her beneficiary status and of the two-year limitations period for making claims. In addition, Plaintiff argues that the incorrect information the union local employee gave to her regarding the need for a marriage license to get death benefits kept her from making a timely claim.[11]

---

10. "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A Charles A. Wright et al., *Federal Practice & Procedure*, § 2727, at 35 (Supp.1994).

11. Plaintiff's counsel argues that Plaintiff did not follow up on the call to Local 247 because she was embarrassed about her unmarried status, especially since she had never told anyone, including her children, that she and Mr. DiMarco never married. However, nothing in her deposition corroborates this contention.

The Fund responds to this motion by asserting first that the six-year contract limitation period on which Plaintiff relies applies only to benefit recovery actions under ERISA § 502, not to claims filed with a pension or welfare fund. The Fund argues second that an appeal to the Board of Trustees would not have been futile because it has extended the two-year limitation period on at least one occasion. Third, the Fund asserts that it was under no duty to inform Plaintiff that she was a beneficiary of Mr. DiMarco's death benefits or to describe to her the procedures that she needed to follow to claim such benefits. Similarly, the Fund argues that it should not be estopped from relying upon the two-year limitation period because of the marriage license statement of someone who was not a Fund agent. The Fund also asserts that even if the misrepresentation were made by a fund employee, "federal law prohibits the application of estoppel principles to a multi-employer employee benefit plan such as [the Fund]."

In its own motion for summary judgment, the Fund urges dismissal because Plaintiff failed to exhaust her administrative remedies before bringing suit. The Fund also argues that the two-year limitation period bars her claim. Plaintiff countered these arguments by asserting that the exhaustion requirement is discretionary, and by urging once again the applicability of the six-year limitations period for contract actions.

### 2. *It Is Inappropriate To Require Plaintiff To Exhaust Her Administrative Remedies.*

■ The Sixth Circuit has held that it is within a trial court's discretion to determine whether to apply an exhaustion requirement to a claim for ERISA benefits. *See Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453–54 (6th Cir.1991). Exercising its discretion, this Court believes that it would be inappropriate to dismiss Plaintiff's case because she failed to appeal her claim denial to the Fund's Board of Trustees.

The Court reaches this conclusion because it believes it is unfair to require Plaintiff to follow the terms of the plan when the Fund has failed to do so. The master plan document states that a claim denial should con-

tain a description of the claims review procedure and notification of the right to appeal. *See, supra* n. 9. Similarly, the SPD in effect at the time Plaintiff should have appealed her claim denial states that the denial is to contain the name and address of the person to whom the appeal should be directed. *See, supra* p. 7. The Fund complied with neither of these provisions in its January 18, 1993 claim denial letter. Moreover, the Fund failed to comply with Plaintiff's reasonable request for all plan documents. *See* ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). Thus, even though Plaintiff had a copy of the 1991 SPD which contained information on appeal procedures, the Court will not bind Plaintiff to these procedures.

### 3. *The Two–Year Limitation On Filing Claims Found In The SPD Is Valid And Enforceable.*

■ Although the Fund is wrong that this is a case in which the Court should apply the exhaustion requirement, it is absolutely correct that the two-year limitation period for claims contained in the Fund's plan documents is valid and enforceable. First, despite Plaintiff's protestations to the contrary, no court has held that a state's limitation period for breach of contract actions applies to anything but actions challenging benefit *denials* under ERISA § 502, 29 U.S.C. § 1132. *See, e.g., Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 194–95 (6th Cir.1992). Instead, ERISA has left it largely to those who create and maintain a welfare plan to determine the contents of the plan, including the claims procedures.

In *Musto v. American General Corp.*, 861 F.2d 897 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989), the Sixth Circuit determined that an employer could amend its health care plan without violating ERISA's fiduciary duties. The court noted:

There is a world of difference between administering a welfare plan in accordance with its terms and deciding what those terms should be. A company acts as a fiduciary in performing the first task, but not the second. As this court, speaking through Judge Celebrezze, declared in *Moore v. Reynolds Metal Co. Retirement Program*, 740 F.2d 454, 456 (6th Cir.1984),

"[n]either Congress nor the courts are involved in either the decision to establish a plan or in the decision concerning which benefits a plan should provide. In particular, courts have no authority to decide which benefits employers must confer upon their employees; these are decisions which are more appropriately influenced by forces in the marketplace and, when appropriate, by federal legislation."

*Musto,* 861 F.2d at 911. *See also Pope v. Central States, Southeast & Southwest Areas Health & Welfare Fund,* 27 F.3d 211 (6th Cir.1994) (holding that multiemployer welfare plans do not breach fiduciary duties when amending a plan to preserve its financial integrity).

The Sixth Circuit teaches, then, that courts in this district are to give effect to the determinations of the scope of an ERISA plan's benefits so long as they do not run afoul of any specific provision of the statute. Plaintiff has not cited, nor has this Court found, any provision in the statute, regulations, or case law which would bar a two-year limitation period for filing claims with the Fund. *See, e.g.,* 29 C.F.R. § 2560.503–1 (requiring an ERISA plan only to establish a "reasonable" claim filing procedure). Indeed, even applying general fairness considerations, such a period of time appears more than ample for plan participants and beneficiaries to assert their rights under the plan.

Because the Court finds that the two-year limitation period for filing claims is valid and enforceable, any benefit denial claim Plaintiff has against the Fund must presumptively fail by virtue of the fact that she did not file her original claim with the Fund within two years of Mr. DiMarco's death. Plaintiff may still, however, prevail if the Court finds some equitable reason to prohibit the Fund from relying upon this period. It is to this issue the Court will now turn.

4. ***As A Matter Of Law, Plaintiff Is Not Entitled To An Award Of Benefits Because The Fund Did Not Provide Her With Notice Of Her Beneficiary Status Or Of The Limitation Period.***

■ Plaintiff suggests that the Fund's alleged failure to comply with ERISA's notice and disclosure requirements by not informing her of her beneficiary status and of the two-year limitation should equitably estop the Fund from relying upon the filing period to deny her claim for benefits. As set forth below, the Court does not believe that the Plaintiff can recover under this theory given the governing Sixth Circuit law.

■ The Sixth Circuit has recognized that equitable estoppel may sometimes apply to ERISA cases. *See Tregoning v. American Community Mut. Ins. Co.,* 12 F.3d 79, 83 (6th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994). In order to invoke equitable estoppel, a plaintiff must show the following:

1) conduct or language amounting to a representation of material fact;

2) awareness of the true facts by the party to be estopped;

3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe the former's conduct is so intended;

4) unawareness of the true facts by the party asserting the estoppel; and

5) detrimental and justifiable reliance by the party asserting the estoppel on the representation.

12 F.3d at 83.

With respect to Plaintiff's disclosure claims, she cannot make out the elements of estoppel. There simply was no representation by the Fund regarding her beneficiary status or the two-year limitation. Rather, there was an alleged failure to provide proper notice to her.

The Court also believes that Plaintiff cannot invoke any other legal theory which would permit her to recover Mr. DiMarco's death benefit based on the fact that the Fund did not inform her of her beneficiary status. Plaintiff does not cite, nor has this Court found, any express statutory or regulatory

provision mandating that the Fund inform Plaintiff that she was Mr. DiMarco's death benefit beneficiary. Indeed, Plaintiff appears to concede this point, and argues instead that such an obligation arises from the common law fiduciary duties of the Fund's Board of Trustees which have been read into the statute. The Court will address this argument later in the opinion.

■ Turning now to the two-year limitation period, the Court is uncertain whether the Fund violated ERISA's notice and disclosure provisions at any time prior to the 1993 request for documents by Plaintiff's counsel. ERISA §§ 101(a) and 104(b), 29 U.S.C. §§ 1021(a) and 1024(b), require that a plan administrator provide a copy of the plan SPD—which in this case would have included the two-year limitation period—"to each participant[12] covered under the plan and to each beneficiary[13] receiving benefits under the plan."

It is unclear from the language of the statute and the unique facts of this case whether Plaintiff falls within the category of "beneficiaries receiving benefits," and thus, whether she was ever entitled to an SPD of her own.[14] On the one hand, it is true that she never received death benefits under the plan, and, therefore, it is questionable as to whether she falls within the statutory classification of eligible recipients for SPDs as being a "beneficiary receiving benefits." On the other hand, factually she had received health benefits at least once from the Fund's SO(A) plan, the same plan which provides the death benefits at issue. Thus, in one sense, she had been "receiving benefits under the plan."

Turning to principles of statutory construction, there seems to be at least an ambiguity in the statutory language "beneficiary receiv-

ing benefits" itself. In the first instance, the language requiring disclosure of an SPD does so by entitling "beneficiaries receiving benefits" to receipt of an SPD. However, the definition of "beneficiary" clearly includes not only those presently entitled to a benefit under the plan, but also those who may become entitled to a benefit under a plan.

Clearly, a designated beneficiary of a one-time death benefit, such as Plaintiff, falls within the statutory definition of "beneficiary." Under that definition, a person becomes a beneficiary under this definition at the time she is designated by the participant, because she "may be entitled to a benefit," i.e., upon the death of the participant, she will receive a benefit if she remains a designated beneficiary. Even if there were any doubt about this reading of the definition, at the very least a designated beneficiary of a death benefit program most certainly becomes a "beneficiary" within the statutory definition immediately upon the death of the participant because she is then "entitled to a benefit."

The question, then, is how to reconcile the provisional language of "beneficiary receiving benefits" with the definitional language of "beneficiary." If one were to read "receiving benefits" as modifying "beneficiary" in the disclosure statute—i.e., limiting the class of beneficiaries entitled to receive SPDs—then those persons who, like Plaintiff, are prospective death benefit beneficiaries within the definition of "beneficiary" would be entirely read out of the disclosure provision. As a result, they would not be entitled to receive SPDs, even if their entitlement to receive benefits had already been triggered by the death of the participant. Although this might, perhaps, make sense with respect to other benefits available under ERISA pen-

12. ERISA defines "participant" with the following language:

> The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

See ERISA § 3(7), 29 U.S.C. § 1002(7). See also 29 C.F.R. § 2510.3–3(d).

13. ERISA § 3(8), 29 U.S.C. § 1002(8), defines "beneficiary" with these words: "The term 'beneficiary' means a person designated by a participant or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."

14. It is undisputed that Plaintiff was never a participant in the Fund's plan.

sion or welfare plans, it makes no sense in the context of one-time death benefits because there would be literally no circumstances under which a designated death benefit beneficiary would be entitled to an SPD before the actual payment of the benefit. Such a beneficiary would not be "receiving benefits" until the death benefit is paid— after which point, provision of an SPD would be virtually meaningless given that the purpose of an SPD is to inform beneficiaries or prospective beneficiaries of their rights under the plan and the procedures to follow to *obtain* benefits in the first place.

The Court believes that the only way to reconcile the statutory language in the context of one-time death benefits is to accept the broader meaning of the term "beneficiary," and to include death benefit beneficiaries designated by participants among those persons entitled to their own SPDs from the point at which these beneficiaries become entitled to benefits, i.e., upon the death of the participants.

The Court is convinced that any other approach would frustrate the Congressional intent underlying the disclosure provisions.[15]

As the Court has noted, once a beneficiary receives a one-time death benefit, he would not need an SPD, even though under a reading of the term "beneficiary receiving benefits" which stresses the "receiving benefits" portion, that would be the first time he was eligible for one. When one considers that the key purpose behind ERISA's notice and disclosure provisions is to inform participants and beneficiaries of how they can exercise their rights under a plan, it seems more consistent with the underlying legislative intent to require a welfare fund to provide an SPD spelling out plan procedures to one-time death benefit beneficiaries after it has notice that the participant has died.[16] Of course, if, after the welfare fund has sent out an SPD addressed to the beneficiary, that beneficiary still fails to timely process his claim, the fund need not pay his benefits.[17]

■ However, the foregoing analysis does not end the inquiry. Even though the Court has found that there was a duty to provide Plaintiff with an SPD of her own once Mr. DiMarco died, the Court finds that *Lewandowski v. Occidental Chem. Corp.*, 986 F.2d

15. The Court does not believe that requiring a fund like Defendant in this case to send out an SPD to a death benefit beneficiary shortly after he is designated as such would further the purpose behind the disclosure provisions in ERISA. Although such a person achieves beneficiary status as soon as he is designated, it is only upon the participant's death that his right to receive benefits vests. It is at that later date, then, that the policies underlying the disclosure provisions are implicated because the beneficiary now has a real interest in becoming aware of plan language and procedures.

16. The Court should add that the rule it announces today does not place an undue burden on a welfare fund like the Defendant. To require the Fund to send out a single copy of a current SPD to a one-time death benefit beneficiary after it has learned of the participant's death could be easily done as part and parcel of the COBRA notification process if the death benefit beneficiary is also a COBRA beneficiary. Even if the death benefit beneficiary is someone other than a COBRA beneficiary, the Court still believes it is not too much to ask a welfare fund to send out a copy of an SPD to the designated beneficiary shortly after it learns of the participant's death.

17. The Fund has urged the Court to rely upon regulations promulgated by the Secretary of La-

bor in order to dismiss Plaintiff's claim that she was entitled to notice of the two-year limitation period. These regulations suggest that beneficiaries receiving benefits under welfare benefit plans like the SO(A) plan in this case are not entitled to copies of SPDs. *See* 29 C.F.R. §§ 2520.104b–1(a) and 2520.104b–2(a). The Court declines this invitation, however, because the statutes which they interpret, ERISA §§ 101(a) and 104(b), 29 U.S.C. §§ 1021(a) and 1024(b), do not draw a distinction between pension and welfare plans with respect to the distribution of SPDs. Similarly, the Court could find nothing in the legislative history of these statutory provisions to support the distinction drawn by the regulations. *See* 1974 U.S.C.C.A.N. 4639–5190. Although the Court is aware that the Secretary has broad powers to promulgate regulations, including those that define "technical terms" in the statute, *see* ERISA § 505, 29 U.S.C. § 1135, it is reluctant to enforce regulations that at least at first blush appear to conflict so openly with the plain language of the statute. *See, e.g., Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984) (courts must engage in a two-prong analysis of an agency's interpretation of a statute; first, the court must examine if Congress expressed its intent on a particular issue, and, second, if not, was the agency's interpretation a reasonable one).

1006 (6th Cir.1993), forecloses the possibility of awarding benefits because of violations of ERISA's notice and disclosure provisions. In *Lewandowski,* plaintiff was the wife of a participant in the defendant employer's (Occidental's) pension plan. Mr. Lewandowski failed to select a benefit option in which his wife would still receive a pension payment even if he died prior to reaching age 65. Unfortunately, Mr. Lewandowski did pass away before turning 65. As a result, plaintiff was not entitled to any pension benefits following his death. She brought suit alleging, *inter alia,* that Occidental's apparently undisputed failure to provide her and her husband with plan documents caused him to fail to select the survivor benefit package because he was unaware of the plan terms. Plaintiff apparently sought the benefits that she would have received had Mr. Lewandowski selected the survivor benefit package. 986 F.2d at 1007–08.

The Sixth Circuit rejected plaintiff's claim that a cause of action for benefits arose from Occidental's failure to comply with ERISA's notice and disclosure provisions. After reviewing conflicting precedent, the court concluded:

> Courts considering the issue rightly have refused to create a blanket ground for recovery not provided in ERISA, either by precluding any damage award or limiting such an award to the most egregious of circumstances. As the ... court [in *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1170 (3d Cir.1990),] theorized, ERISA's remedial scheme presents a detailed, reasoned compromise between plan participants' need for adequate disclosure and the disincentives expansive liability for nondisclosure might present to employers considering institution of a retirement

plan. Nothing in § 1132 suggests that a plan beneficiary should receive a benefit award based on a plan administrator's failure to disclose required information. Rather, as the *Hozier* court held, § 1132(c) acts as an affirmative limit on possible remedies.[18] Because plaintiff seeks recovery expressly based on defendant's failure to follow ERISA procedures, she may not recover.

986 F.2d at 1009–10.

This Court reads *Lewandowski* to hold that a beneficiary's remedies for a breach of ERISA's notice and disclosure requirements are limited to § 502(c) of the statute, 29 U.S.C. § 1132(c). In the instant case, however, none of the provisions in § 502(c) call for penalties for a plan administrator's failure to supply notice to a death beneficiary of her beneficiary status, to supply notice of a two-year limitations period for making claims, or even to supply an SPD (until it was requested by the participant or beneficiary).

Thus, even if this Court were to hold that the Fund did breach a duty to disclose to Plaintiff her beneficiary status and the existence of a two-year filing period for claims, *Lewandowski* would still bar her from recovering the $20,000 death benefit or any statutory penalties for those violations. If Plaintiff would be unable to recover in a direct action under this theory, the Court does not see how a failure to comply with ERISA's procedural requirements should estop the Fund from relying upon its two-year limitation period for filing claims. Plaintiff's estoppel argument based on the Fund's alleged noncompliance with its disclosure duties, therefore, must fail.

---

**18.** ERISA § 502(c), 29 U.S.C. § 1132(c), provides for penalties for various violations of the notice and disclosure requirements of the statute. Under the current version of the statute, § 502(c)(1) permits a district court to award penalties of up to $100 a day for failure by a plan administrator to (i) comply with the notice provisions set out in COBRA, (ii) comply with the notice provisions for transfers of excess pension assets into health benefit accounts, and (iii) respond to requests for plan documents. Section 502(c)(2) permits penalties of up to $1000 a day for the failure of a plan administrator to file an annual report with the Secretary of Labor. Section 502(c)(3) provides for penalties of up to .$100 a day for any employer who fails to give proper notice of its failure to meet minimum funding standards or who fails to give proper notice to the Secretary, the plan administrator or an affected labor union of a transfer of excess pension funds into a health benefit account. Finally, § 502(c)(4) permits a court to assess up to a $1000 a day against any person who violates notice provisions applicable to Medicare and Medicaid coverage.

The Court should add, however, that although ERISA § 502(c)'s sanction provisions do not include penalties for the specific violations alleged by Plaintiff in her complaint, she may nonetheless have a claim under this section for the Fund's failure to respond to her counsel's February 1 and April 5, 1993 requests for plan documents. Section 502(c)(1) states:

Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the Court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the Court may in its discretion order such other relief as it deems proper.[19]

29 U.S.C. § 1132(c)(1). Moreover, ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), states:

The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a rea-

sonable charge under the preceding sentence.

It is undisputed that the Fund did not comply with the requests by Plaintiff's counsel for various plan documents until Plaintiff initiated this action on June 30, 1993. Thus, under the statutes quoted above, Plaintiff appears to have a claim for statutory penalties of up to $100 a day from the date of her counsel's first request for these documents (plus 30 days) until they were provided in discovery. *See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1069–1069 (6th Cir.1994).

Plaintiff, however, has not pled a claim under § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), which permits recovery of the penalties set out in § 502(c), so this issue is not formally before the Court. Nonetheless, the Court would consider a second motion to amend Plaintiff's complaint to conform to the evidence of record and, thereby, to add this claim should Plaintiff decide to pursue this matter. If Plaintiff does move to amend her complaint and the Court grants such amendment, the Court may then request further briefing from the parties on this issue.

**5. *The Fund Should Not Be Equitably Estopped From Relying Upon The Two–Year Limitation Period Because Of The Misstatement Made By The Union Local Employee.***

The Court also believes that no material issues of fact exist on whether the Fund should be equitably estopped from relying upon the two-year limitation period because of the misrepresentation made by the person at Local 247 regarding the need for Plaintiff to have a marriage license to claim benefits available upon Mr. DiMarco's death. As not-

---

**19.** Unfortunately for Plaintiff, the Sixth Circuit has already rejected the argument that the last sentence of § 502(c)(1) grants a court the authority to award benefits because of a failure to comply with ERISA's notice and disclosure requirements. In *Lewandowski, supra,* the Court stated:

Though § 1132(c) concludes by ambiguously granting a court discretionary power to "order such other relief as it deems proper," nothing in that subsection, or § 1132 as a whole, suggests that ERISA would approve of an affirmative damage recovery based merely on a plan

administrator's failure to adhere to proper notification and disclosure procedures.

986 F.2d at 1008.

Although the Court may respectfully disagree with this analysis, as the quoted statutory language seems to invite courts to invoke "make whole" relief, it appears clear that the Sixth Circuit has precluded this reading with its holding in *Lewandowski.* Perhaps the Sixth Circuit will revisit this question in this or some other case; until it does, however, the relief requested by Plaintiff appears unavailable.

ed above, in order to demonstrate estoppel, Plaintiff must show that *the Fund* made a material misrepresentation and that she justifiably relied upon it. Plaintiff can do neither.

Plaintiff contends that the person at Local 247 who informed her that she would need a marriage license as well as a death certificate to claim death benefits was an agent of the Fund. The Fund counters that the Local 247 employee had no authority from the Fund to administer or explain the terms and conditions of its welfare plan. Indeed, the SPDs specifically state that the Fund should be contacted with any death benefit questions or claims.[20]

Plaintiff has failed to come forward with any evidence that Local 247 was acting with even apparent authority to bind the Fund. *See General Elec. Co. v. G. Siempelkamp GmbH & Co.*, 809 F.Supp. 1306, 1310 (S.D.Ohio 1993) ("Apparent agency requires a showing that the principal held the agent out to the public as possessing sufficient authority to perform the particular act in question...."); *Liberty Heating & Cooling, Inc. v. Builders Square, Inc.*, 788 F.Supp. 1438, 1445 (E.D.Mich.1992) ("A principal is vicariously liable for the torts of its agents when the agent acts within the scope of his usual employment or the principal has cloaked the agent with apparent authority."), *ap. dismissed*, 968 F.2d 1215 (6th Cir.1992). Without some sort of showing that the Fund took steps which gave to Local 247 the appearance of authority—if not actual authority—with respect to administering or explaining the Fund's death benefits, the Court cannot hold that equitable estoppel should apply to the comments made by one of Local 247's employees.

Moreover, the Court does not believe that a reasonable jury would conclude that Plaintiff's reliance on the comment was justifiable under the circumstances. Plaintiff did not take any steps to follow up on the phone call. She did not even explain her special situation as a *de facto*, if not *de jure*, wife to the person she spoke with at Local 247. By her own testimony, Plaintiff was too preoccupied with other matters to pursue possible benefits she was entitled to as a result of Mr. DiMarco's death. In these circumstances, the Court does not believe equitable estoppel should apply to bar the Fund from relying upon its two-year limitations period for death benefit claims.

Because the Court is not persuaded that any material issues of fact exist with respect to Plaintiff's § 502(a)(1)(B) claim for death benefits and that the Fund is entitled to judgment as a matter of law, it will dismiss Count I of Plaintiff's complaint.

## C. COUNT II SHOULD BE DISMISSED.[21]

### 1. The Board Should Be Named A Defendant.

As an initial matter, the Court notes that although Count II claims that the Board of Trustees violated its fiduciary duties, the Board has not been named a party to this action. Because the Court and parties inadvertently overlooked this fact when Plaintiff amended her complaint to add the fiduciary claim, the Court hereby orders that the Fund Board of Trustees be joined as a Defendant.

### 2. The Parties' Arguments.

Plaintiff argues that the Board violated its fiduciary duties to her by implementing a

---

**20.** *See* Hooper Dep., Ex. 12, p. 25 (1983 SPD); Ex. 13, p. 29 (1986 SPD); Ex. 7, p. 28 (1987 SPD).

**21.** The Court is not certain under what provision of the statute this claim arises. Section 409 of ERISA, 29 U.S.C. § 1109, in tandem with § 502, 29 U.S.C. § 1132(a)(2) provides for suits for breach of fiduciary duty, but the U.S. Supreme Court has held that the relief available under this section accrues only to the plan, not to individual beneficiaries. *See Massachusetts Mut. Life Ins. v. Russell*, 473 U.S. 134, 143, 105 S.Ct. 3085, 3091,

87 L.Ed.2d 96 (1985). ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits beneficiaries to obtain equitable relief to redress violations of the statute or to enforce the terms of the statute or of the applicable plan. Presumably, Plaintiff's claim for benefits as a result of the alleged breach of fiduciary duty is one for restitution and, therefore, arises under this provision. *But cf. Mertens v. Hewitt Assocs.*, — U.S. —, — — —, 113 S.Ct. 2063, 2069–72, 124 L.Ed.2d 161 (1993) (holding that compensatory damages are not available under ERISA § 502(a)(3)).

two-year limitation period, by failing to notify Plaintiff of her entitlement to death benefits, and by making a misrepresentation, through one of its agents, concerning the need for a marriage license to qualify for benefits.[22] The Board counters that fiduciary duty analysis does not apply to the limitation period, and that the Board disclosed to Plaintiff all that it legally should have disclosed.

### 3. Plaintiff's Claim For Breach Of Fiduciary Duties Must Fail.

ERISA § 404(a)(1) outlines the duties owed by fiduciaries:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and beneficiaries; and ...

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims ...

29 U.S.C. § 1104(a)(1).

■ Much of what has been said above governs the application of this statute to the instant case. With respect to the limitation period itself, the Sixth Circuit has already held in *Musto v. American General Corp., supra,* that the entity that creates the terms of a plan does not act in a fiduciary capacity when it so establishes those terms. Moreover, and alternatively, the Court has found that the two-year limitation period for filing claims in the plan is reasonable. Thus, the Board did not breach its fiduciary duties by enacting the limitation period.

■ Turning to the misrepresentation made by the employee at Local 247 with whom Plaintiff spoke, the Court notes that the Sixth Circuit has held that misrepresentations by *plan fiduciaries* does constitute a breach of fiduciary duty. *See Drennan v.*

*General Motors Corp.,* 977 F.2d 246, 251–52 (6th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993); *Berlin v. Michigan Bell Tel. Co.,* 858 F.2d 1154, 1163 (6th Cir.1988). This is of no use to Plaintiff, however, because, as the Court has already found, the Local 247 employee was not an agent, apparent or otherwise, of the Fund. Thus, any misrepresentation made by her does not make the Board liable.

■ Plaintiff further asserts that the Board of Trustees had a duty to notify her of her beneficiary status. Plaintiff cites *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985), in support of her argument that the Board should have so informed her. *Central States,* however, is inapposite to the instant case.

In *Central States,* the question was whether a pension plan's trustees could perform an audit of contributing employers to determine which of their employees were *participants* in the plan in order to ensure that the employers were making the proper contributions to the plan. 472 U.S. at 561–65, 105 S.Ct. at 2836–37. The U.S. Supreme Court held that the clear terms of the governing trust agreement and the policies of ERISA permitted such an audit. 472 U.S. at 581, 105 S.Ct. at 2846. Thus, *Central States* is easily distinguished from this case on the facts.

Plaintiff, however, relies on some dicta found in the opinion explaining the common law of a trustee's duties to support her argument that the Fund had an obligation to inform her that she was a death benefit beneficiary:

ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries, and that trustees will take steps to identify all participants and beneficiaries, so that the trustees can make

---

**22.** In its amended complaint, Plaintiff also asserted that the Board of Trustees breached their fiduciary duties to her by not informing her of the two-year limitations period. However, Plain-

tiff did not pursue this argument in her brief and argument on the cross-motions for summary judgment.

them aware of their status and rights under the trust's terms.

One of the fundamental common-law duties of a trustee is to preserve and maintain trust assets, [G. Bogert & G. Bogert, Law of Trusts and Trustees] § 582, at 346, and this encompasses "determin[ing] exactly what property forms the subject-matter of the trust [and] who are the beneficiaries." *Id.,* § 583, at 348 (footnotes omitted). The trustee is thus expected to use reasonable diligence to discover the location of the trust property and to take control without "unnecessary delay." *Id.,* at 355. A trustee is similarly expected to "investigate the identity of the beneficiary when the trust documents do not clearly fix such party" and to "notify the beneficiaries under the trust of the gifts made to them." *Id.,* at 348–49, n. 40.

472 U.S. at 571–72, 105 S.Ct. at 2841 (footnote omitted).

The Court does not read this passage, however, to *mandate* that a employee benefit fund inform all *beneficiaries* of the benefits to which they may be entitled. Indeed, in describing the specific provisions of ERISA, the Supreme Court noted that generally only *participants* must receive this information:

> The provisions of ERISA make clear that a benefit plan trustee is similarly subject to these responsibilities, not only as a result of the general fiduciary standards of loyalty and care, borrowed as they are from the common law, but also as a result of more specific trustee duties itemized in the Act. For example, the Act's minimum reporting and disclosure standards require benefit plans to furnish all *participants* with various documents informing them of their rights under the plan, see, e.g., 29 U.S.C. §§ 1021, 1022, 1024(b), a task that would certainly include the duty of determining who is in fact a plan participant.

472 U.S. at 572, 105 S.Ct. at 2841 (footnotes omitted; emphasis added).

Moreover, in concluding its discussion of ERISA fiduciary duties, the Supreme Court reiterated the point that the statute mandates that information be given generally only to plan participants:

> Both the concern for fully informing plan *participants* of their rights and status under a plan and the concern for assuring the financial integrity of the plans by determining the class of potential benefit claimants and holding employers to the full and prompt fulfillment of their contribution obligations are proper and weighty within the framework of ERISA.

472 U.S. at 574, 105 S.Ct. at 2842 (emphasis added).

In short, this Court views the language in *Central States* upon which Plaintiff relies to be dicta which does not add to the statute the duty, fiduciary or otherwise, that death benefit beneficiaries be informed of their present or future status under the plan. Plaintiff does not cite, nor has the Court found, any case which has so construed *Central States,* and the Court declines the opportunity today to create such a rule.

The Court draws support for the conclusion that the Board was under no fiduciary duty to inform Plaintiff of her beneficiary status from *Maxa v. John Alden Life Ins. Co.,* 972 F.2d 980 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1048, 122 L.Ed.2d 357 (1993). In that case, plaintiff argued that the insurance company administering decedent's medical plan breached its ERISA fiduciary duties by not informing decedent on his sixty-fifth birthday that his benefits would be reduced and that he should enroll in Medicare or some other coverage. *Maxa* rejected the argument, noting that "the great majority of courts, however, have not imposed upon an ERISA plan fiduciary the duty individually to notify participants and/or beneficiaries of the specific impact of the general terms of the plan upon them." 972 F.2d at 985. The *Maxa* court went on to quote favorably a district court's reasoning for this rule:

> The rationale for this holding is that fiduciaries should be able to rely upon the detailed and uniform guidance ERISA provides with regard to disclosure requirements rather than bearing the practically impossible burden of anticipating, and comprehensively addressing, the *individualized* concerns of thousands of employees, especially without notice of those concerns.

972 F.2d at 986, *quoting Childers v. Northwest Airlines,* 688 F.Supp. 1357, 1361 (D.Minn.1988) (emphasis added in *Maxi* ). *See also Stahl v. Tony's Bldg. Materials, Inc.,* 875 F.2d 1404, 1409–10 (9th Cir.1989) (fund had no duty to inform plaintiff that the expiration of a collective bargaining agreement would put his past service credits in jeopardy when SPD adequately explained this fact).

*Maxa* is instructive in that it held that it is inappropriate to read into an already detailed disclosure scheme the requirement that plan fiduciaries notify beneficiaries of their individualized circumstances. The Court believes that this same reasoning should apply here. Absent additional guidance from Congress or the courts on this issue, the Court is simply unwilling to shift the duty to inform an individual beneficiary of his beneficiary status from its natural locus, the benefactor, to an ERISA welfare fund. In other words, the Court does not believe that the Board should bear the cost of the lack of communication between Plaintiff and Mr. DiMarco. The Court, therefore, rejects Plaintiff's argument that the Fund was the party responsible for informing her that she was his death benefit beneficiary.

Moreover, even if the Court were to find that the Fund had a fiduciary duty to disclose her beneficiary status to her, it does not believe that the breach of this alleged duty was the cause of the untimeliness of her claim. Plaintiff's own testimony indicates that she was aware, or made aware, that she was entitled to some, albeit unspecified, benefits based upon Mr. DiMarco's death at the time she called Local 247. In one of her briefs, Plaintiff conceded that she "contacted the Teamsters Local 247 office and inquired about the procedure required to claim death benefits, of which she presumed she was the beneficiary." *See* Plaintiff's January 7, 1994 Brief, p. 2. The record, therefore, indicates that Plaintiff already had actual knowledge that she was Mr. DiMarco's beneficiary for any death benefits that he may have had forthcoming. Lack of notice of her status,

then, could not have been the cause of her failure to pursue these benefits.

Finally, as noted above, this Court believes that even assuming that there was a duty, fiduciary or otherwise, on the part of the Board of Trustees to notify Plaintiff of her beneficiary status, *Lewandowski* limits any possible recovery for failure to comply with the ERISA notice and disclosure requirements to the circumstances and remedies spelled out in § 502(c). Because none of those specified circumstances are present in the Board's failure to inform Plaintiff of her beneficiary status, she is not entitled to an award of benefits.[23]

## IV. CONCLUSION

In the end, Plaintiff's reasons for not receiving Mr. DiMarco's death benefits were not the result of any legally cognizable error by the Fund or its Board, but, rather, were caused by her own failure to exercise her rights and an unfortunate misrepresentation by a non-agent of the Fund. While the Court sympathizes with Plaintiff's plight, it has no legal basis upon which to grant the relief she has requested so far.

For the foregoing reasons, then,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' motions for summary judgment are GRANTED. Plaintiff's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that before dismissing the case, the Court will permit Plaintiff 30 days after the entry of this order to file a motion to amend her complaint to allege a claim under ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A) for the penalties available under § 502(c)(1) as a result of the Fund's failure to timely respond to her counsel's February 1 and April 5, 1993 requests for plan documents.

---

**23.** Of course, as noted above, Plaintiff may be entitled to statutory penalties for the Board's

failure to provide her with plan documents that her counsel requested in early 1993.