Orvin Floyd VILLERS and Cheryl Villers, Plaintiffs,

v.

BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, et al., Defendants.

Civ. A. No. 6:94–0778.

United States District Court, S.D. West Virginia, Parkersburg Division.

Sept. 20, 1995.

Robert K. Tebay III, Lantz & Tebay, Parkersburg, WV, for plaintiffs.

Robin Jean Davis & John F. Dascoli, Segal & Davis, Charleston, WV, Nan E. McGrane, Sheet Metal Workers' Nat'l. Benefit Funds, Alexandria, VA, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' motion for summary judgment and Plaintiffs' motion for partial summary judgment.[1] Plaintiffs have not responded to Defendants' motion; Defendants have responded to Plaintiffs' motion and Plaintiffs have replied. The time for further filings has lapsed and this matter is ripe for adjudication.[2]

Plaintiffs filed their complaint September 8, 1994, alleging Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), Title 29 U.S.C. §§ 1132 and 1141, when the Appeals Committee of Defendant Board of Trustees of the Sheet Metal Workers National Pension Fund ("the Plan") denied Plaintiff Orvin Villers ("Villers") dis-

---

1. Pending also is Plaintiffs' motion to exceed the twenty (20) page limit on supporting memoranda. L.R.Civ.P. 4.01(a) ("A judicial officer for good cause shown may allow a supporting memorandum to exceed 20 pages."). The Court GRANTS the motion to exceed the page limit.

2. Pursuant to Local Rule of Civil Procedure 4.01(c), "[m]emoranda and other materials in response to motions shall be filed with copies delivered to the assigned judicial officer and served on opposing counsel and unrepresented parties within 14 days from the date of service of the motion." Plaintiffs moved to continue the time to file a response to Defendants' motion and a reply to Defendants' response for thirty days and said motion was granted. Although Plaintiffs eventually replied to Defendants' response to their motion, they failed to respond to Defendants' motion.

ability benefits. Plaintiffs contend the Plan's decision to deny Villers' claim for disability benefits was arbitrary and capricious. They also contend the Plan and Defendant Sheet Metal Workers International Association, Local Union 33 ("the Local") violated ERISA and federal common law by, among other things, misrepresenting Villers' eligibility for disability benefits in order to induce him to join the Local and participate in the Plan.

Villers was the sole owner and operator of a heating and air conditioning business from 1972 through 1991. In 1991 he was contacted by Earl Webb, an organizer for the Local. According to Villers, Webb and another Local official, Harry Oiler, persuaded Villers to join the Local and participate in the Plan. This persuasion included a promise to Villers that he would receive fifteen (15) years of "past service credit" for pension purposes if he divested himself of ownership in his business.

The prospect of receiving this past service credit was an important, if not critical, consideration of Villers in determining whether to sign his shop with the Local. He asserts the information he received at this early juncture concerning his entitlement to past service credit emanated solely from Webb and Oiler. Villers eventually divested himself of ownership of his business by incorporating it and installing his wife as sole owner and president of the company. He then joined the Local and began participating in the Plan in April of 1991. Contributions to the Local and the Plan were deducted from his pay. Villers, however, apparently did not seek confirmation of his entitlement to past service credit until after he transferred control of his business to his wife. This "confirmation" was in the form of an April 11, 1991, letter from a Plan official.[3]

Villers suffered a heart attack in December of 1993 and thereafter applied for a disability pension from the Plan. The Plan denied the pension, however, after concluding Villers lacked sufficient past service credit to make him eligible for benefits. As support for the denial, the Plan cited the "Plan Booklet" that outlined participants' eligibility for

benefits and rejected Villers' contention that he should be credited with fifteen years of past service credit. The adverse decision was affirmed when Villers appealed the determination to the Plan's Appeal Committee. Villers and his wife now seek relief against both the Plan and the Local.

Plaintiffs essentially assert the Plan (1) abused its discretion in denying Villers' disability pension, and (2) engaged in certain statutory violations of ERISA. They also purport to assert federal common law claims of estoppel and misrepresentation against the Plan and the Local. Defendants respond the Plan's denial of benefits was reasonable and that no substantial statutory violations occurred. Defendants also assert they cannot be held liable on Plaintiffs' federal common law grounds.

**I.**

The standard used to determine whether a motion for summary judgment should be granted or denied has been stated by our Court of Appeals as follows:

A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir.1979).

A genuine issue exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2514. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied*, 498 U.S. 1109,

---

3. As discussed more fully below, the April 11, 1991 letter does not appear to "confirm" any-

thing in regard to past service credits. *See infra* note 11.

111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.* *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, —— U.S. ——, ——, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994).

## II.

Defendants first assert they are entitled to judgment as a matter of law, at least in part, because the Plan's reasonable interpretation of its governing documents mandated the denial of Villers' requested disability pension.

■ This Court addressed the standard of review for a denial of benefits by an ERISA Plan in *Pritt v. United Mine Workers of America 1950 Benefit Plan and Trust*, 847 F.Supp. 427 (S.D.W.Va.1994) (Haden, C.J.):

The standard of review of a decision made by Trustees of an ERISA benefit plan is ordinarily *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Richards v. United Mine Workers of America Health and Retirement Fund*, 895 F.2d 133, 135 (4th Cir.1990); *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir.1989). However, where the Plan gives the Trustees *discretion* to determine benefit eligibility or to construe plan terms, the standard of review is whether the Trustees abused that discretion.[4] *Firestone, supra*, 489 U.S. at 111, 109 S.Ct. at 954, 103 L.Ed.2d at 92–93 ("Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers. Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse of discretion. A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable.") (citations and internal quotations omitted).)

*Id.* at 429 (emphasis in original) (footnote added). Where the plan administrator does not have discretion to determine benefit eligibility, however, such decisions are reviewed *de novo*.

■ Defendants argue the decision to deny benefits to the Plaintiffs should be reviewed for an abuse of discretion. Their position is well-taken. Section 8.03 of the Plan states, in part, as follows:

The Trustees shall have the sole and absolute power, authority and discretion to determine:

(a) the standard of proof required in any case;

(b) the application and interpretation of this Plan;

(c) entitlement to or amount of pension;

(d) the disability, extent of disability, or nondisability of Plan participants; and

(e) the crediting of Future or Past Service.

The decisions of the Trustees with respect to any of the foregoing shall be final and binding.

The foregoing clearly demonstrates the Plan has discretion to interpret and apply the terms of its governing documents. Therefore the Plan's application and interpretation of those documents are reviewable only for an abuse of that discretion.

■ Villers apparently filed for a disability pension pursuant to Section 5.10 of the Plan. One of the prerequisites for eligibility for a disability pension under the Plan is ten (10) years of pension credit. Under the Plan,

---

4. The "abuse of discretion" standard of review may be the same as the pre-*Firestone* "arbitrary and capricious" standard. *See Lockhart v. United Mine Workers of America 1974 Pension Trust*, 5 F.3d 74, 77 n. 5 (4th Cir.1993) (noting that the Courts of Appeal had utilized the "arbitrary and capricious" standard after *Firestone*, but declining to "resolve the differences, if any, between the two standards."). *See Sheppard & Enoch Pratt Hosp. Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 n. 4 (4th Cir.1994).

pension credit accrues for every year the plan participant works in covered employment, even if the covered employment occurred prior to the participant's participation in the Plan. Defendants contend the Plan excludes past service credit for time worked by a participant as a sole proprietor of a business. After reviewing the Plan *in toto*, it is clear that the Trustees' interpretation denying past service credit was, at the very least, reasonable. For instance, Section 1.10 of the Plan states: "The term 'Covered Employee' shall not include any individual who is the sole proprietor of or a partner in a business organization." Further, a very readable question-and-answer section in the summary plan description provides that "[s]ole proprietors and partners may not participate in the" Plan. Villers does not contest that he was a sole proprietor in the years for which he seeks past service credit. The Court thus concludes that the Plan's denial of benefits was not an abuse of discretion.

### III.

In their motion for summary judgment, Plaintiffs primarily assert that the Plan contravened certain statutory provisions within ERISA in the following particulars: (1) the Plan failed to supply Villers with a copy of the summary plan description outlining the terms of the Plan in a timely manner; (2) the summary plan description was ambiguous in regard to Villers eligibility for past service credit; (3) the Plan failed to prevent Villers misunderstanding or ineligibility for past service credit; and (4) the Plan's Appeals Committee failed to provide Villers a full and fair review of his claim.[5]

---

**5.** The Plaintiffs have raised additional arguments as well. Those arguments, however, are clearly devoid of any merit.

**6.** Section 1024(b)(1) provides, in pertinent part, as follows:

    **(1)** The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a)(1) of this title—

    **(A)** Within 90 days after he becomes a participant, or (in the case of a beneficiary)

■ First, Plaintiffs contend they did not receive the summary plan description within ninety days of the date Villers began participating in the Plan as required by 29 U.S.C. § 1024(b)(1).[6] It appears instead that Villers did not receive the plan booklet until approximately five or six months after the ninety-day period set forth in § 1024(b)(1). First, it should be noted this allegation is not contained in Plaintiffs' complaint. Second, given the facts of this case, and even assuming the Plaintiffs' delayed-reporting allegation is true, § 1024(b)(1) simply does not provide the basis for the substantive relief the Plaintiffs seek. *See, e.g., Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 569 (7th Cir.1995) ("[T]echnical violations of ERISA requirements do not justify relief absent a showing of bad faith, active concealment, or detrimental reliance" and finding that the plaintiff had "not shown the bad faith, active concealment, or detrimental reliance that would justify granting him a substantive remedy for" the alleged violations); *Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 124 (3rd Cir.1995) (stating "[w]e have repeatedly held that under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for" elsewhere in ERISA). Accordingly, even if a technical reporting violation occurred, it does not give rise to an action for compensatory damages.

■ Plaintiffs next allege the Plan documents are ambiguous and violate 29 U.S.C. § 1022(a)(1)[7] because the documents are difficult to understand. The Court disagrees. Admittedly, there are some isolated instances where the Plan may not be cast in the most artful language. This is not atypical in com-

---

    within 90 days after he first receives benefits. . . .
*Id.*

**7.** Title 29 U.S.C. § 1022(a)(1) provides, in pertinent part, a summary plan description "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Id.*

prehensive, detailed, and interactive plan documents. After objectively, rather than subjectively, reviewing the summary plan description and the Plan as a whole,[8] the Court simply cannot conclude the documents are so deficient as to warrant the imposition of a statutory or common-law remedy.[9]

■ Further, as noted previously, the Plan trustees reasonably construed its governing documents as not granting past service credit to participants for time employed as a sole proprietor. This is quite significant because, assuming the governing documents are ambiguous on the issue of past service credit, such an ambiguity is insufficient to vacate an otherwise reasonable interpretation of a plan by the trustees of a fund. *See de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir. 1989) (finding two reasonable constructions of a Plan, but nevertheless stating that "where plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, 'courts may not replace [it] with an interpretation of their own'—and therefore cannot

disturb as an 'abuse of discretion' the challenged benefits determination.") (modification in original).[10] Based on these and other considerations, the Court concludes that the Plan documents did not contravene § 1022(a)(1) and did apprise Villers and other participants of their rights and responsibilities sufficiently.

■ Plaintiffs contend that the Plan failed to notify Villers of his disability pension ineligibility. The facts and applicable precedent do not support the argument. After reviewing the Plan in detail, the Court has concluded the documents clearly exclude sole proprietors from the category of covered employees. Moreover, it is unclear from the Plaintiffs' brief precisely what cause of action they are pursuing. The plain provisions in the summary plan description are all the notification the Plan was required to give the Plaintiffs. If Plaintiffs required more information or doubted the representations of Webb and Oiler, they should have contacted the appropriate Plan officials for clarification.[11]

---

8. *See, e.g., Hansen v. Continental Ins. Co.*, 940 F.2d 971, 981 (5th Cir.1991) (stating that "the summary plan description must be read as a whole").

9. The Plaintiffs argue, in part, that a February 1994 amendment to § 4.02(c) of the Plan demonstrates there was obvious confusion about the granting of past service credit to sole proprietors. The amendment provides that "[n]o Past Service Credit may be granted for any period of employment as a sole proprietor or partner in an unincorporated business." Merely because the Plan sought to provide a clearer express statement of its rule for sole proprietors, however, does not mean necessarily that the existing Plan provisions on this issue were confused.

10. It should be noted that the action by the Trustees herein was apparently consistent with past practices. For instance, the Fund has apparently never granted past service credit to a participant for time spent as a sole proprietor.

11. This and related alleged omissions and misconduct by the Plan are repeated throughout the Plaintiffs' summary judgment submissions. The theme of this disturbing pattern is that the Plan essentially should have foreseen and cured the injuries suffered by the Plaintiffs, even absent any assistance in that regard from the Plaintiffs themselves. For instance, on April 11, 1991, a benefit analyst for the Plan wrote a letter to Mr. Oiler. Villers claims he relied on this letter in

assuring himself that he would be granted the promised past service credit. The letter states, in pertinent part, as follows:

> Rodney A Villers—would be granted Past Service Credit from 1984 through 3/31/91 *provided he was employed in covered employment and earned a minimum of $2500 in each of these calendar years. This information would be verified with Social Security Earnings at the time of retirement.*
> Floyd O. Villers—would be granted Past Service from 1972 through 3/31/91, a total of 15 years (maximum) *based on the same criteria listed above.*

(emphasis added).

Villers complains the Plan had a duty to clarify the question of his entitlement to past service credit via a supplemental disclosure, based on alleged past confusion about the past service credit that was granted to sole proprietors. The Court disagrees. At some point, a participant must take personal responsibility to inquire about uncertainties in his or her entitlement to benefits. From the excerpt above, one could deduce readily that to qualify for past service credit, Villers would have been required to participate in "covered employment" for a period of time. Further, Plaintiffs should have been aware this employment information would not be verified by the Plan until perhaps years later when Villers would seek benefits under the Plan. Given these substantial caveats, there was little in the letter upon which Villers could rely. At bottom, if Villers harbored any uncertainties

■ The Plaintiffs next complain the Plan's appeal procedure did not afford them the full and fair review required by 29 U.S.C. § 1133.[12] This assertion, too, apparently was omitted from the Plaintiffs' complaint. In particular, the Plaintiffs assert (1) they were not assisted in framing and developing their claim and evidence; (2) the Appeals Committee was presented with only a brief synopsis of Villers' appeal; and (3) the appeal was considered in a perfunctory manner only.

The Department of Labor regulations designed to implement § 1133 provide as follows:

> (g) *Review procedure.* (1) Every plan shall establish and maintain a procedure by which a claimant or his duly authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary or to a person designated by such fiduciary, and under which a full and fair review of the claim and its denial may be obtained. Every such procedure shall include but not be limited to provisions that a claimant or his duly authorized representative may:
>
> > (i) Request a review upon written application to the plan;
> >
> > (ii) Review pertinent documents; and
> >
> > (iii) Submit issues and comments in writing.

29 C.F.R. § 2560.503—1(g)(1) (1995); *see also Sandoval v. Aetna Life & Casualty Ins. Co.,* 967 F.2d 377, 382 (10th Cir.1992).

The Court has reviewed the documents relating to the appeal. First, the record reveals Villers was represented by counsel and his attorney filed a three-and-one-half page single spaced letter with the Plan setting forth the issues to be reviewed. Second, the Plaintiffs do not assert they were denied access by the Plan to any "pertinent documents." Thus, the requirements of § 2560.503—1(g)(1) are satisfied. Even aside from these requirements, however, it is apparent Villers was afforded a fair hearing on his appeal. For instance, a Plan official prepared a detailed summary of the appeal for consideration by the Appeals Committee and a fund administrator sent Plaintiffs' counsel a detailed letter indicating the specific reasons for the denial of the appeal. Finally, while the Plaintiffs might speculate otherwise, there is simply no evidence the Appeals Committee devoted an insubstantial period of time to the matter.

The Court concludes the Appeals Committee acted in substantial, if not complete, compliance with the applicable statutory and regulatory requirements of a full and fair hearing. As recognized by the United States Court of Appeals for the Fourth Circuit in *Weaver v. Phoenix Home Life Mutual Ins. Co.,* 990 F.2d 154 (4th Cir.1993), § 1133 was designed "to protect a plan participant form arbitrary and unprincipled decision-making." There is simply no basis to infer that such misconduct occurred in the instant case. Accordingly, the Court concludes, as a matter of law, the Plan did not violate § 1133.[13]

## IV.

The Court now turns to Defendants' putative liability arising from Plaintiffs' colorable federal common law claims. The question posed is whether the Plan, the Local, or both, may be liable under federal common law on estoppel principles or for misrepresentation.

> In accordance with regulations of the Secretary, every employee benefit plan shall—
> ....
> **(2)** afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.
>
> *Id.*

**13.** Given the failure to find any substantial statutory violation on the part of the Plan, the Court necessarily concludes that none of the alleged actions discussed above rise to the level of a

about his coverage, it was his responsibility to inquire further. *See, e.g., Electro–Mechanical Corp. v. Ogan,* 9 F.3d 445, 452 (6th Cir.1993) (stating "[a]bsent a specific employee-initiated inquiry ... a fiduciary is not obligated to seek out employees to ensure that they understand the plan's provisions as described in the explanatory booklet."). The Court therefore must discount the Plaintiffs' attempts to shift responsibility to the Plan for any alleged uncertainties surrounding Villers' entitlement to benefits.

**12.** Section 1133 provides, in pertinent part, as follows:

The Court will address the liability, or lack thereof, of each Defendant below.

### A. Liability of the Plan

█ After reviewing the record as a whole, with particular reference toward Plaintiffs' motion for summary judgment and attachments thereto, the Court concludes there is no basis in fact to infer the Plan engaged in any direct activity calculated either to mislead or misrepresent to the Plaintiffs that Villers would be eligible for past service credit. The Plaintiffs simply have failed to meet their burden under Rule 56(c) on this issue. *Cf. Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 127 (4th Cir.1994) (rejecting an estoppel claim against a plan because "[t]here [was] no evidence of any misleading statements or conduct by the [p]lan that would have led a reasonable person to rely on" the acts of the Plan as a manifestation of intent to provide coverage).

The failure to establish direct representations or misrepresentations by the Plan does not end the matter, however. The Plaintiffs have alleged Local officials Webb and Oiler represented or misrepresented Villers' entitlement to past service credit. Assuming that the estoppel and misrepresentation causes of action are cognizable against a Plan in this Circuit,[14] then, the Court must address whether the Local officials acted as agents for the Plan, thereby exposing the Plan to possible vicarious liability.

The instant case is strikingly analogous to *DiMarco v. Michigan Conf. of Teamsters Welf. Fund,* 861 F.Supp. 599 (E.D.Mich. 1994). In *DiMarco,* the plaintiff lived with a participant of the defendant fund for 29 years, but the two never married. When the participant passed away, his companion contacted an employee of participant's union local and sought information on applying for death benefits. The employee informed the plaintiff she would have to supply both a marriage license to, and a death certificate for, the participant in order to secure the sought after benefits. The plaintiff did not learn until later that only the death certificate was required. By that time, however, the period for applying for death benefits had lapsed, and plaintiff's request for benefits was denied.

Plaintiff argued the incorrect information provided her by the local union employee kept her from filing a timely claim. The Fund, however, countered that the local employee's statements were not binding on it because the employee was not an agent of the Fund. In concluding the Fund was not equitably estopped from denying benefits to plaintiff, the court stated as follows:

> Plaintiff has failed to come forward with any evidence that [the local] was acting with even apparent authority to bind the Fund. Without some sort of showing that the Fund took steps which gave to [the local] the appearance of authority—if not actual authority—with respect to administering or explaining the Fund's death benefits, the Court cannot hold that equitable estoppel should apply to the comments made by one of [the local's] employees.

*Id.* at 612 (citations omitted).[15]

Like the plaintiff in *DiMarco,* the Plaintiffs in the instant case have mustered little, if any, evidence that tends to demonstrate the Plan took any steps which gave Webb, Oiler, or the Local apparent or actual authority with respect to administering or explaining the Plan's provisions for past service credit. The Plaintiffs assert the Local (1) recruited Local members who eventually participated in the Plan; (2) collected prior em-

---

breach of fiduciary duty under either ERISA or federal common law.

**14.** This assumption may not be warranted. For instance, in *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54 (4th Cir.1992), the Fourth Circuit stated, *inter alia,* "[u]se of estoppel principles to effect a modification of a written employee benefit plan would conflict with 'ERISA's emphatic preference for written agreements.'" *Id.* at 58 (quoted authority omitted).

**15.** *DiMarco*'s approach is apparently consistent with the current weight of authority. *See, e.g.,* Stephen R. Bruce, *Pension Claims—Rights and Obligations* 421 (2nd ed. 1993) (stating "[g]enerally, it has been held that employees in both single-employer and multiemployer plans should know that union officers and union business agents lack the authority to bind a plan by their representations—unless they are also plan trustees or appear to have some other authority over the plan.")

ployment data on participants in the Plan; (3) corresponded with the Fund on behalf of the participant; (4) notified the Fund of new contributors; and (5) distributed Plan booklets. Accepting these representations, however, does not approach a showing of Webb's, Oiler's, or the Local's actual or apparent authority to administer or explain the Plan's provisions, whether for past service credit or otherwise.[16]

Accordingly, the Court concludes as a matter of law that Webb, Oiler, and the Local were not acting as agents of the Plan when they made the alleged misrepresentations to Villers. Accordingly, the Court concludes that the Plan has no liability to Plaintiffs and hereby GRANTS summary judgment to the Plan on all claims asserted by Plaintiffs.

### B. Liability of the Local Via Webb and Oiler

■ The primary question relating to the liability of the Local through the actions of Webb and Oiler is whether the federal common law surrounding ERISA provides for either misrepresentation or estoppel claims against these two nonfiduciaries and, vicariously, their employer.[17]

■ In enacting ERISA, Congress created a labyrinthine and encyclopedic statutory scheme to govern employee benefit plans. *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir.1992). It has been held, however, that " 'Congress [also] intended that the courts would "develop a [complimentary] 'federal common law of rights and obligations under ERISA-regulated plans.' " ' " *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 559 (4th Cir.1994) (quoting *Singer*, 964 F.2d at 1452). Stated another way, "[w]hen ERISA fails to address an issue and the state law governing that issue has been preempted, the Supreme Court and the Fourth Circuit have authorized federal courts to develop federal common law of rights and obligations under ERISA-regulated plans." *Id.* at 562.

The Fourth Circuit has cautioned that this limited mandate does "not give 'carte blanche' authority for the courts to develop claims at large." *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 876 (4th Cir.1994) (en banc) (Niemeyer, J., concurring in part and dissenting in part); *see also Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58 (4th Cir.1992); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 992 (4th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). Further, the Court of Appeals has observed "that the resort to federal common law generally is inappropriate when its application would: (1) conflict with the statutory provisions of ERISA; (2) discourage employers from implementing

---

**16.** Further, while not necessary to resolution of the matter, the Court notes that another observation from *DiMarco* may have particular application here:

> Moreover, the Court does not believe that a reasonable jury would conclude that Plaintiff's reliance on the comment was justifiable under the circumstances. *Plaintiff did not take any steps to follow up on the phone call.* She did not even explain her special situation as a *de facto*, if not *de jure*, wife to the person she spoke with at [the local].

*Id.* at 612 (emphasis added). Justifiable reliance is an issue here as well. While in no way countenancing Webb's and Oiler's alleged misrepresentations, it is quite troubling here that Villers relied on such representations to the point of divesting himself of any ownership interest in his business and agreeing that his shop would become union without any concrete written guarantee from the Plan that he qualified for past service credit. One must question whether it was reasonable to relinquish control over one's business and materially alter that business' labor relations based solely on oral representations of a relentless agent from a union who was engaged in a vigorous effort to organize the business.

**17.** There cannot be any serious dispute that Webb and Oiler are not fiduciaries under ERISA. Title 29 U.S.C. § 1002(21)(A), ERISA's definition of a "fiduciary," provides in pertinent part as follows:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan....

*Id.*

plans governed by ERISA; or (3) threaten to override the explicit terms of an established ERISA benefit plan." *Phoenix,* 30 F.3d at 563 n. 21; *see Coleman,* 969 F.2d at 59; *Singer,* 964 F.2d at 1452. The Court of Appeals has also stated "courts should remain circumspect to utilize federal common law to address issues that bear at most a tangential relationship to the purposes of ERISA." *Singer,* 964 F.2d at 1452 (citing *Provident Life,* 906 F.2d at 992).

This reluctance toward the development and extension of the existing body of federal common law attached to ERISA is a recurring theme in this Circuit. *Adams,* 30 F.3d at 562, 565 (recognizing the Court was "creating new, albeit limited, federal common law" and that the Court would "limit [its] holding to the facts" of the case); *Elmore,* 23 F.3d at 870 (Wilkins, J., concurring) (stating that he would "reserve judgment on the difficult question of the appropriateness of fashioning common-law theories under ERISA."); *Id.* at 878 (Niemeyer, J., concurring in part and dissenting in part) (stating that "in an ERISA *federal common law case ... courts* must be cautious not to create new causes of action out of whole cloth, in violation of the explicit statutory enforcement scheme which limits the causes of action available under the Act."); *Singer,* 964 F.2d at 1452 (stating "[i]t has proved a difficult task delineating those situations in which federal common law is a desirable companion to ERISA from those in which federal common law imposes an unwarranted and unacceptable expansion of those rights and remedies established by ERISA"; *Id.* at 1453 (Wilkinson, J., concurring) (stating "I write here to emphasize my view that federal courts should be quite cautious in fashioning federal common law to govern actions brought under ERISA."); *Provident Life,* 906 F.2d at 992 (stating "[w]e must proceed cautiously in creating additional rights under the rubric of federal common law....")

The Fourth Circuit has not spoken expressly on the propriety of using federal common law as a means to extend liability to a nonfiduciary.[18] Further, there is not an abundance of authority elsewhere on the precise legal question presented in this case. After carefully canvassing Fourth Circuit precedent for guidance on the contours and development of federal common law, however, the Court finds the reasoning of *Buckley Dement, Inc. v. Travelers Plan Admins., Inc.,* 39 F.3d 784 (7th Cir.1994), persuasive.

In *Buckley,* the plaintiff asserted alternative federal and state common-law claims for breach of contract, negligence and breach of fiduciary duty against a nonfiduciary insurance company. *Id.* at 786. The Court's reasoning concerning the liability of a nonfiduciary in such a context is worth quoting at length:

> [A]s the Supreme Court has pointed out to us on more than one occasion, "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries" in pension and welfare benefit plans. The statute's "six carefully integrated civil enforcement provisions" to remedy ERISA violations, found at 29 U.S.C. § 1132(a), demonstrate the evident care with which the remedial aspects of the statute were crafted. This consideration counsels against our concluding that Congress intended the federal courts to fashion any other remedies. More recently, the Supreme Court, in *Mertens [v. Hewitt Assocs.,* —— U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) ], made clear that the statute's detailed enforcement scheme provides "strong evidence that Congress did *not* intend to authorize other remedies." [Further,] "[w]e have ... been extremely reluctant to find that ERISA creates certain causes of action by implication in addition to those enumerated in the statute itself." Rather, mindful of our role as an intermediate appellate court, we have concluded that "because ERISA is a highly technical statute our part is to apply it as precisely as we can, rather than to make adjustments according to a sense of equities in a particular case."

**18.** It appears the nearest the Court came to addressing the question was in *Custer v. Pan American Life Ins. Co.,* 12 F.3d 410 (4th Cir.1993).

Unfortunately, the Court reserved any detailed discussion of the matter.

*[W]e [have] noted that our authority to augment the specific remedial provisions of ERISA was "far more circumscribed" than our power to create substantive federal common law to implement the provisions of ERISA.* Relying on the Supreme Court's holding in *Pilot Life [Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) ], we noted that this limitation was due to the obvious care that Congress had taken in delineating the scope of ERISA's remedial power. Consequently, we determined that Congress' failure to authorize suits against professionals who advise plan administrators must be considered an affirmative decision not to permit such a cause of action.

*We believe, therefore, that ... we are without authority to entertain a claim for relief against a nonfiduciary based on our fashioning of a federal common-law remedy.* Accordingly, even if we were to determine that the complaint adequately pleads a federal common-law remedy such as those suggested on appeal by [the plaintiff], we could not say that ERISA permits such relief against a nonfiduciary.

*Id.* at 789–90 (citations omitted) (emphasis, in part, in original). The court in *Buckley* suggests indirectly that there is a distinction between (1) incorporating common law **principles** that aid in the application of ERISA's comprehensive latticework and (2) indiscriminately adding common law **causes of action**, which may not complement the Congressional scheme. The distinction is a valid one. It is one thing, for instance, to develop federal common law by incorporating common law principles of contract construction to interpret the provisions of an ERISA plan. It is quite another, however, simply to append an otherwise unincorporated cause of action to accompany those six carefully tailored civil enforcement remedies that Congress laboriously considered and eventually adopted in the form of 29 U.S.C. § 1132. This is especially so when the new cause of action is asserted against a non-fiduciary—an entity who, some have surmised, is not exposed to liability under ERISA in the first place. *See Mertens v. Hewitt Assocs.,* —— U.S. ——, ——, 113 S.Ct. 2063, 2067, 124 L.Ed.2d 161 (1993) (acknowledging "the oddity of resolv-

ing a dispute over remedies where it is unclear that a remediable wrong has been alleged" in the context of a suit against a nonfiduciary under ERISA)

Like the court in *Buckley,* this Court is reluctant to import either an estoppel or misrepresentation cause of action into the federal common law of ERISA. On balance, this course of action seems ill-advised, given the careful and exacting scrutiny our Court of Appeals has directed toward the extension and creation of federal common law. The Court concludes that the Plaintiffs may not maintain their proposed federal common law causes of action against the Local.

## V.

In accordance with the foregoing opinion, the Court hereby **GRANTS** the Defendants' motion for summary judgment, (2) **DENIES** the Plaintiffs' motion for partial summary judgment, and (3) **DISMISSES** the case from the docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.